ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **HÉCTOR L. GONZÁLEZ DÁVILA**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>**MI PAN ASOCIADOS, INC. CORPORACIONES Y, Z**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202201307** | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **CAROLINA**<br><br>Caso Núm. **F PE2017-0312 (401)**<br><br>Sobre: Despido Injustificado |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos, juez ponente*

# R E S O L U C I Ó N

En San Juan, Puerto Rico, hoy día 31 de octubre de 2023.

Comparece ante este Tribunal de Apelaciones, **Mi Pan Asociados, Inc.** (**Mi Pan**) mediante *Solicitud de Certiorari* incoada el 30 de noviembre de 2022. En su escrito, nos solicita que revisemos la *Resolución* emitida el 7 de septiembre de 2022 por el Tribunal de Primera Instancia (TPI), Sala Superior de Carolina. [1] Mediante dicha determinación judicial, el foro primario declaró *no ha lugar* una *Moción para Solicitar Sentencia Sumaria* presentada el 29 de noviembre de 2021 por **Mi Pan**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

## - I -

Para el mes de diciembre del año 2015, el señor **Héctor González Dávila** (señor **González Dávila**) comenzó a laborar como contable en **Mi Pan**. Ello bajo la supervisión de la señora Enid Colón.

---

[1] Este dictamen fue notificado y archivado en autos el 16 de septiembre de 2022. Véase Apéndice de la *Solicitud de Certiorari*, págs. 810-822.

Después, el 4 de septiembre de 2016, la señora Ivelisse Vargas, encargada de compras, recibió una notificación por correo electrónico concerniente a un recibo de compra de la tienda *Home Depot*, cargado a una tarjeta corporativa de **Mi Pan**. El señor Alfonso Labeaga Rodríguez, vicepresidente, ordenó una investigación sobre posible fraude. En diciembre de 2016, el señor Labeaga Rodríguez requirió la participación del señor **González Dávila** en la aludida investigación. Como parte de las gestiones del señor **González Dávila**, la señora Colón le informó que ella fue quien realizó la compra, pero afirmó que lo hizo como parte de un plan dirigido por el señor José Luis Labeaga Ojanguren, presidente de **Mi Pan**, con el propósito de evaluar el desempeño del señor Labeaga Rodríguez, su hijo, en los procesos de compra.[2] Empero, la investigación que realizó **Mi Pan**, y de la cual el señor **González Dávila** fue parte, demostró que la señora Colón usó la tarjeta de crédito de forma fraudulenta. Ante ese hallazgo, **Mi Pan** determinó despedir a la señora Colón.

Posteriormente, el 30 de diciembre de 2016, el señor Labeaga Ojanguren, presidente de **Mi Pan,** citó al señor **González Dávila** a una reunión para discutir los hallazgos de la investigación que culminó con el despido de la señora Colón. En dicha reunión, el señor Labeaga Ojanguren le censuró que no había asumido su responsabilidad como contable por no haberse percatado antes de los desvíos ilegales de fondos; tenía que asumir responsabilidad y su labor como contable no cumplía con las expectativas de la compañía. Ante los señalamientos del señor Labeaga Ojanguren, el señor **González Dávila** se molestó y expresó que no quería continuar trabajando en **Mi Pan,** por lo que, ponía su puesto a su disposición.[3] Mientras el señor **González Dávila** se disponía a recoger sus pertenencias, los señores Labeaga Ojanguren y Labeaga Rodríguez se le presentaron a su área de trabajo y le pidieron regresar a la oficina del presidente. Allí dialogaron y el señor Labeaga Ojanguren le manifestó que no le aceptaba la renuncia y le pidió que se quedara en la compañía. Ante

---

[2] Véase *Solicitud de Certiorari*, pág. 4.
[3] *Íd.*

ello, el señor **González Dávila** condicionó su permanencia en **Mi Pan** a un aumento de sueldo. En enero de 2017, el señor **González Dávila** recibió el incremento salarial.

Un tiempo después, el 19 de abril de 2017, la señora Vargas le informó al señor Labeaga Rodríguez que el señor **González Dávila** le gritaba; golpeaba o daba un manotazo a cosas cerca de ella; y se sentía intimidada. El 10 de mayo de 2017, hubo otro incidente. Por ello, el 12 de mayo de 2017, el señor Labeaga Ojanguren determinó despedir al señor **González Dávila**.

El 27 de julio de 2017, el señor **González Dávila** entabló una *Demanda* en contra de, **Mi Pan**, su patrono, por violación a la *Ley de Despido Injustificado* y la *Ley de Represalias.*[4] Adujo que su despido en mayo de 2017 fue en represalias por lo ocurrido en el año 2016 concerniente a la investigación sobre fraude.

El 10 de noviembre de 2017, **Mi Pan** presentó su *Contestación a la Demanda.*[5] En síntesis, planteó que la decisión de despedir al señor **González Dávila** no estaba relacionado con su desempeño como contable de la compañía ni su participación en la investigación que culminó con un despido. Aseguró que las razones de su despido son atribuibles a los actos de insubordinación y faltas en el trato irrespetuoso y/o hostil a sus compañeros de trabajo.

El 29 de noviembre de 2021, al concluir el descubrimiento de prueba, **Mi Pan** presentó una *Moción para Solicitar Sentencia Sumaria* a tenor con la Regla 36.3 de las de Procedimiento Civil.[6] **Mi Pan** destacó que el hecho de que el señor **González Dávila** haya tenido la intención de renunciar después de la investigación, así como el señor Labeaga Ojanguren no le aceptara la renuncia y accediera a su condición de aumento salarial, destruye cualquier ánimo represivo contra el señor **González Dávila**.

---

[4] Véase Apéndice de la *Solicitud de Certiorari*, págs. 1– 6. Conocida como la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a; y Ley Núm. 115 de 20 de diciembre de 1991, según enmendada. 29 LPRA sec. 194, respectivamente.
[5] Véase Apéndice de la *Solicitud de Certiorari*, págs. 9– 21.
[6] *Íd.*, págs. 42– 279.

Más tarde, el 28 de enero de 2022, el señor **González Dávila** presentó su *Oposición a Moción de Sentencia Sumaria con la Presentación de Hechos Adicionales Materiales y Pertinentes a las Reclamaciones del Demandante*.[7] En resumen, el señor **González Dávila** expresó que los alegados incidentes con la señora Vargas eran falsos; y **Mi Pan** violentó el Manual de Empleados al no brindarle disciplina progresiva.

Luego de varios trámites procesales, el 7 de septiembre de 2022, el tribunal de instancia emitió la *Resolución* objeto del presente recurso. El foro primario realizó ochenta y nueve (89) determinaciones de hechos no controvertidos. Asimismo, determinó doce (12) hechos que fueron controvertidos. Tales hechos controvertidos son los siguientes:

1.      Si las razones del despido por parte de José Labeaga fueron fabricadas para ocultar su ánimo represivo –en represalias– en contra del demandante tras haber descubierto, reportado y participado en la investigación del esquema de fraude.
2.      Si la decisión de José Labeaga para despedir al demandante fue tomada desde diciembre 2016 y solo estaba esperando el momento oportuno para hacerlo.
3.      Si José Labeaga tenía afiliación especial –favoritismo– con la empleada Enid Colón.
4.      Si Mi Pan incumplió con el Manual de Empleados a la hora de despedir al demandante.
5.      Si Mi Pan investigó [sic] las alegaciones que hizo Ivelisse Vargas en contra del demandante.
6.      Si Mi Pan le dio la oportunidad [al] demandante para defenderse sobre las alegaciones de Ivelisse Vargas en su contra.
7.      Si Mi Pan llegó [sic] a amonestar al demandante previo al despido.
8.      Si cuando contrataron al demandante le prometieron un bono.
9.      Si al demandante se le aumentó el sueldo.
10.     Si las alegaciones de Ivelisse Vargas referente a los malos tratos del demandante son falsas.
11.     Si el demandante tuvo una conducta desordenada en la empresa.
12.     Si Mi Pan recibió quejas sobre el comportamiento del demandante.

En desacuerdo, el 7 de octubre de 2022, **Mi Pan** presentó *Solicitud de Reconsideración*.[8] En su escrito, **Mi Pan** argumentó que era evidente la falta de temporalidad entre la investigación y el despido. Asimismo, manifestó que se cumplió con el Manual de Empleados de la compañía.

---

[7] Véase Apéndice de la *Solicitud de Certiorari*, págs. 280– 555.
[8] *Íd.*, págs. 823– 833.

Así pues, el 24 de octubre de 2022, el foro primario intimó una *Orden*, declarando no ha lugar la *Solicitud de Reconsideración*.[9]

Inconforme, **Mi Pan** recurre ante este foro intermedio planteando los siguientes señalamientos de error:

> Erró el TPI al denegar la Solicitud de Sentencia Sumaria respecto a la reclamación de represalias a pesar de no haber nexo causal alguno entre la participación del recurrido en el 2016 en una investigación sobre fraude y su despido en mayo de 2017.

> Erró el TPI al denegar la Solicitud de Sentencia Sumaria respecto a la reclamación de despido injustificado toda vez que el récord contiene prueba incontrovertida sobre conducta agresiva, ofensiva y desordenada, la cual constituía justa causa para su despido.

El 13 de diciembre de 2022, este tribunal intermedio emitió *Resolución* concediéndole al señor **González Dávila** un término perentorio de diez (10) días para mostrar causa por la cual no procede la expedición del auto de *certiorari* y, por consiguiente, la revocación el dictamen impugnado.

El 19 de diciembre de 2022, el señor **González Dávila** presentó *Urgente Moción Solicitando Breve Prórroga para Presentar Memorando en Oposición a la Expedición de Certiorari*. El 20 de diciembre de 2022, este foro revisor decretó *Resolución* mediante la cual concedió una prórroga de diez (10) días. Ante ello, el 3 de enero de 2023, el señor **González Dávila** presentó su *Memorando en Oposición a la Expedición del Auto de Certiorari*.

Por último, el 19 de octubre de 2023, **Mi Pan** presentó una *Moción Urgente para que se Paralicen los Procedimientos ante el Tribunal de Primera Instancia, en Auxilio de la Jurisdicción de este Honorable Tribunal*. Unos días después, el 30 de octubre de 2023, **Mi Pan** presentó *Moción Urgente para Reiterar que en Auxilio de la Jurisdicción de este Tribunal, se Ordene la Paralización de los Procedimientos ante el Tribunal de Primera Instancia*.

---

[9] Véase Apéndice de la *Solicitud de Certiorari*, pág. 834.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. A continuación, presentamos las normas de derecho pertinentes a las controversias planteadas.

**- II -**

**- A -**

El recurso de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial.[10] Por ello, la determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial.[11]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[12] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[13]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[14] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[15]

En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o

---

[10] *Rivera Gómez v. Arcos Dorados Puerto Rico Inc.,* 2023 TSPR 65; 211 DPR ___ 2023; *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46; 211 DPR ___ 2023; *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[11] *Íd.*
[12] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[13] *Íd.*
[14] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[15] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[16]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[17]

**- B -**

El examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros. Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A)     Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B)     Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C)     Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.;
(D)     Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E)     Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F)     Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G)     Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[18]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[19] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[20] Ello, pues distinto al recurso de apelación, este

---

[16] 4 LPRA Ap. XXII-B; *IG Builders v. BBVAPR*, 185 DPR 307, 339- 340 (2012).
[17] 4 LPRA Ap. XXII-B, R. 40. *McNeil Healthcare v. Mun. Las Piedras I*, *supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[18] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez*, *supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[19] *García Morales v. Padró Hernández,* 165 DPR 324, 335 esc. 15 (2005).
[20] *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

Tribunal posee discreción para expedir el auto de *certiorari*. [21] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[22]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[23] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[24]

**- C -**

La *sentencia sumaria* es un mecanismo procesal extraordinario que tiene el propósito de facilitar una solución justa, rápida y económica de aquellos litigios civiles que no presentan controversias genuinas de hechos materiales.[25] En estos casos, se prescinde de la celebración de una audiencia ya que los documentos no controvertidos que acompañan la moción de *sentencia sumaria* sirven para demostrar, efectivamente, la inexistencia de una controversia real sobre hechos materiales, por lo que solo resta aplicar el derecho.[26]

El mecanismo se encuentra instituido por la Regla 36 de Procedimiento Civil de 2009.[27] Las Reglas 36.1 y 36.2 de las de Procedimiento Civil de 2009 disponen que cualquiera de las partes puede presentar "una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada". En cualquier caso, "la parte que promueve la

---

[21] *Feliberty Padró v. Pizarro Rohena,* 147 DPR 834, 837 (1999).
[22] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. de Caguas v. JRO Construction, supra.*
[23] *García v. Asociación de Suscripción Conjunta,* 165 DPR 311, 322 (2005).
[24] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).
[25] *Vera v. Dr. Bravo,* 161 DPR 308, 331 (2004).
[26] *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010).
[27] *32* LPRA Ap. V, R. 36.

sentencia sumaria debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material".[28] Ello se debe a que el mecanismo de *sentencia sumaria* solo está disponible para la disposición de aquellos casos que son claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[29] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable.[30]

Para demostrar de manera efectiva la ausencia de controversia sobre los hechos materiales, la parte promovente viene obligada a desglosar estos hechos en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[31] Por su parte, quien se opone a que se dicte sentencia sumariamente debe controvertir la prueba presentada por la parte que la solicita. Para ello debe cumplir con los mismos requisitos con que tiene que cumplir la parte promovente, pero, además, su solicitud debe contener:

> una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal.[32]

De no hacerlo, la parte opositora corre el riesgo de que la solicitud de *sentencia sumaria* sea acogida por el tribunal y se resuelva en su contra.[33] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[34] Esta parte no puede descansar en meras alegaciones, sino que viene obligada a contestar en forma tan detallada y específica

---

[28] *Ramos Pérez v. Univisión, supra,* pág. 213.
[29] *PFZ Properties, Inc. v. Gen. Acc. Ins.,* 136 DPR 881, 911-912 (1994).
[30] *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012).
[31] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432 (2013).
[32] Regla 36.3(b)(1) de las de Procedimiento Civil de 2009, *supra.*
[33] *Ramos Pérez v. Univisión, supra,* pág. 215.
[34] *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

como lo haya hecho la parte promovente.[35] No obstante, será el análisis del derecho aplicable y de la existencia de alguna controversia sustancial de hechos materiales lo que determinará si procede dictar sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[36]

Al evaluar la procedencia de la solicitud de *sentencia sumaria*, el foro sentenciador analizará los documentos que acompañan la moción de *sentencia sumaria*, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal.[37] "Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[38] Como parte de este análisis, el tribunal **no** tiene que considerar los hechos que no estén debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establezcan.[39] Tampoco tiene la obligación de considerar cualquier parte de una declaración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en la relación de hechos.[40]

Por último, es preciso subrayar que toda duda, por leve que sea, en cuanto a la existencia de una controversia real sobre algún hecho material es suficiente para resolver en contra de la parte que solicita que se dicte sentencia sumariamente.[41]

"[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de la credibilidad es esencial y está en disputa".[42] Empero, "la regla no excluye tipos de casos y realmente puede funcionar en cualquier contexto sustantivo".[43]

---

[35] Regla 36.3(c) de las de Procedimiento Civil de 2009, *supra.*
[36] *Ortiz v. Holsum,* 190 DPR 511, 525 (2014).
[37] *PFZ Properties, Inc. v. Gen. Acc. Ins., supra,* pág. 913.
[38] *Mgmt. Adm. Servs. Corp. v. ELA,* 152 DPR 599, 610-611 (2000).
[39] Regla 36.3(d) de las de Procedimiento Civil de 2009, *supra.*
[40] *Id.*
[41] *Vera v. Dr. Bravo, supra,* pág. 334.
[42] *Ramos Pérez v. Univisión, supra,* pág. 219.
[43] *Id.,* pág. 220.

Este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar denegatorias o concesiones de mociones de *sentencia sumaria*.[44] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009, *supra,* y su jurisprudencia interpretativa.[45] Esto supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor.[46] Por la misma razón, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil de 2009.[47]

Si el foro primario *acogió* la moción y dictó sentencia sumariamente, nos corresponderá revisar que efectivamente no existan hechos materiales en controversia.[48] De no haberlos, procederemos entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho.[49] Por el contrario, si el foro de primera instancia *denegó* la moción de *sentencia sumaria* por entender que existían hechos materiales en controversia, "el tribunal apelativo solo revisa si el foro primario abusó de su discreción".[50]

- III -

En primer orden, la Regla 52.1 de las de Procedimiento Civil de 2009 nos permite expedir el auto solicitado cuando se recurra de una resolución u orden bajo remedios provisionales de las Reglas 56 y 57 de las de Procedimiento Civil de 2009 o de la denegatoria de una moción de carácter dispositivo. La última de estas instancias es precisamente el tipo de determinación de la que se recurre en el presente caso. Por lo que, estamos ante una determinación revisable por este foro intermedio y sobre

---

[44] *Rivera Matos et al. v. ELA Triple S et al.*, 204 DPR 1010, 1026 (2020); *Meléndez González et al. v. M. Cuebas, Inc.,* 193 DPR 100, 118 (2015).
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.,* pág. 119.
[50] *Id.,* pág. 116.

la cual podemos expedir el auto de *certiorari*.

En este caso, **Mi Pan** señala que erró el tribunal de instancia al denegar su *Moción para Solicitar Sentencia Sumaria*. Manifiesta que en el expediente no existe prueba que razonablemente fomente concluir que existen hechos en controversia. Argumentó que, como hecho incontrovertido, el despido del señor **González Dávila** fue cinco (5) meses después de la investigación que culminó con el despido de la señora Colón, y, asegura que no existe nexo causal entre la investigación -conducta protegida- y el despido del señor **González Dávila**. Expuso que no se puede establecer una proximidad temporal como factor indispensable para que prospere una reclamación *prima facie* de despido por represalias. Adicionalmente, indicó que de este tribunal intermedio no intervenir, se perpetuaría un fracaso de la justicia.[51]

Por otro lado, el señor **González Dávila** replicó que la evidencia comprobó que el foro primario no cometió ninguno de los errores señalados. Aseguró que, por lo tanto, es necesario dilucidar la controversia en un juicio plenario. Asimismo, indicó que, a tenor con la norma de deferencia judicial, este foro revisor no debe sustituir el criterio del tribunal recurrido. Alegó, además, que no cabe imputarle arbitrariedad, pasión, perjurio o parcialidad o error manifiesto al foro primario, pues cumplió con la Regla 36 de las de Procedimiento Civil de 2009.[52]

Al evaluar la totalidad del expediente, realizando una evaluación *de novo* de la solicitud de sentencia sumaria, así como la oposición y la evidencia incluida en cada uno de los escritos, es menester analizar con particular énfasis la *Resolución* impugnada. El tribunal *a quo* enumeró los hechos materiales que a su entendimiento se encuentran en controversia y concluyó basado en la prueba presentada por las partes.[53] Ahora bien,

---

[51] Véase *Solicitud de Certiorari*, pág. 25.
[52] Véase *Memorando en Oposición a la Expedición del Auto de Certiorari*, págs. 26– 27.
[53] Véase *Solicitud de Certiorari*, pág. 820. Dichas hechos controvertidos o controversias son: Si las razones del despido por parte de José Labeaga fueron fabricadas para ocultar su ánimo represivo –en represalias– en contra del demandante tras haber descubierto, reportado y participado en la investigación del esquema de fraude. Si la decisión de José Labeaga para despedir al demandante fue tomada desde diciembre 2016 y solo estaba esperando el momento oportuno para hacerlo. Si José Labeaga tenía afiliación especial –favoritismo– con la empleada Enid Colón. Si Mi Pan incumplió con el Manual de Empleados a la hora de despedir al demandante. Si Mi Pan investigó [sic] las alegaciones que hizo Ivelisse Vargas en contra del demandante. Si Mi Pan le dio la oportunidad [al]

discernió que específicamente, existe controversia en torno al tiempo que transcurrió desde la investigación que culminó con el despido de la señora Colón; la reunión del señor Labeaga Ojanguren, presidente, con el señor **González Dávila** donde este le cuestionó sobre su eficiencia en el puesto de contabilidad; y fecha en la cual se le despidió por conducta con la señora Vargas.[54] Es fundamental establecer el mencionado hecho para discutir la proximidad real que hubo entre la investigación que culminó con el cesantía de la señora Colón y el destitución del señor **González Dávila**. Ciertamente, ante un reclamo al amparo de la Ley Núm. 80 y la Ley Núm. 115 es necesario determinar la conexión, si alguna, entre la acción adversa y el nexo causal.

Tal y como expusimos, el mecanismo de *sentencia sumaria* permite a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que **no exista alguna controversia material de hecho** que requiera ventilarse en un juicio plenario y el derecho así lo permita.[55] Por consiguiente, al disponer de una solicitud de *sentencia sumaria,* el tribunal deberá ceñirse única y exclusivamente a las reclamaciones manifestadas en el expediente del caso al momento en que se presenta la moción dispositiva ante el tribunal.[56]

Luego de analizar los planteamientos a la luz de los hechos y del derecho aplicable, así como los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, colegimos que no existe elemento alguno que motive nuestra intervención con el dictamen del foro *a quo*. El tribunal de instancia no ha actuó con arbitrariedad, pasión, perjurio o parcialidad o error manifiesto, pues cumplió con la Regla 36 de las de Procedimiento Civil de 2009. Cónsono con lo intimado por el Foro recurrido, la existencia de controversias sobre hechos esenciales, así como las complejidades del pleito, inclinan la balanza a no resolver el caso

---

demandante para defenderse sobre las alegaciones de Ivelisse Vargas en su contra. Si Mi Pan llegó [sic] a amonestar al demandante previo al despido. Si cuando contrataron al demandante le prometieron un bono. Si al demandante se le aumentó el sueldo. Si las alegaciones de Ivelisse Vargas referente a los malos tratos del demandante son falsas. Si el demandante tuvo una conducta desordenada en la empresa. Si Mi Pan recibió quejas sobre el comportamiento del demandante.
[54] *Id.*, pág. 296.
[55] *León Torres v. Rivera Lebrón*, 204 DPR 20, 24 (2020).
[56] *Id.*, pág. 58.

sumariamente como pretende **Mi Pan**; requiriendo la celebración de un juicio en su fondo. Sobre ese aspecto, la final adjudicación del caso que haga el Tribunal de Primera Instancia podrá ser objeto de revisión, si así **Mi Pan** lo considera necesario. Por tanto, procede *denegar* la expedición del presente recurso.

**- IV -**

Por los fundamentos antes expuestos, ***denegamos*** la expedición del auto de *certiorari* instado el 30 de noviembre de 2022 por **Mi Pan**, ello de conformidad con la Regla 40 del Tribunal de Apelaciones, *supra*.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones